ELWIN S. BENTLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

E. MERRITT ASHWORTH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEROY P. BROWNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19783, 19784, 19785. Promulgated February 15, 1950.

*Howe P. Cochran, Esq.,* for the petitioners.
*William F. Evans, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: The principal issue in this case' is whether peti-
tioners may be taxed on the profits of the Hoosick Engineering Co.
or whether they are taxable only on their respective salaries and
bonuses from that company.

The petitioners have been engaged in the automobile spare parts
and engineering business since the early 1920's, and have been asso-
ciated with each other since the late 1920's. They have been together
in the Hoosick Engineering Co. itself, which they have operated
since 1939. Over the course of the years they acquired considerable
knowledge of and skill in the industry and in this particular company.

The business itself showed fair earning power under petitioners'
management. From a loss of $106.91 in its first year of operation it
went on to earn $41,858 in 1943. However, the petitioners, after con-
sidering the results of their operations and the small amount of net
profits left to them after the payment of an excess profits tax, decided
to sell or liquidate their business. It was at this point that their tax
counsel suggested the formation of a partnership by petitioners' wives
and the employment of the husbands to operate the business.

The terms of the partnership arrangement provided for an alloca-
tion of interests and benefits in accordance with original family stock
holdings in the corporation. The petitioners were to continue the con-
trol of the company, with no change in or interruption of policy or
operations. The profits to be distributed to the wives were to be in
accordance with their cash contributions to the partnership, which in
turn were to be in the same proportion as the stock interest formerly
held by their husbands,* the petitioners. The petitioners' salaries as
originally set were to be in the same amount as formerly received from
the corporation. As the business prospered, the husbands received a
larger participation in the profits of the company, which generally was
in proportion to the interests formerly held by petitioners in the
corporation.

Under the plan as proposed and carried out, title to the assets for-
merly owned by petitioners remained with them, subject to a nominal
rental for the good will and going business, and a rental of the equip-
ment at a figure equal to 6 per cent of its cost. The agreement was to
run for no set time and presumably could be revoked at will. The
plan was not one that people dealing at arm's length would enter into.

After the plan had been effected, the only substantial change which
had been brought about was that the wives and the petitioners should
share the income from the company. The income of the business was
still produced mainly through the efforts of the petitioners. It was a

---

*In the case of the Brownells, stock in the corporations was held by husband and wife.

business which admittedly required a high degree of technical skill and specialized knowledge such as the petitioners had always furnished and continued to furnish. The company's major assets were never relinquished to any substantial degree, either with respect to formal title or to the use of the assets. Petitioners' arrangement with their wives could be terminated at will.

In our opinion, the purpose of the wives' partnership was not the creation or operation of a joint enterprise. They furnished no services other than the formal signing of checks. The record discloses no purposes for a partnership by the wives other than that of minimizing income taxes. As the court said in *Earp* v. *Jones*, 131 Fed (2d) 292; certiorari denied, 318 U. S. 764:

> The apparent purpose of the partnership was not the creation and carrying on of a new joint enterprise or uniting their joint efforts or substance in a new undertaking. The real purpose of the partnership was to minimize income taxes. It is well settled that it is not unlawful to avoid the attachment of taxes. When a new tax comes into existence one is free to arrange or change his method or mode of operation to avoid the attachment of the tax or minimize the effect thereof. *The change must, however, be real and substantial. One may not merely change the form but do business in substantially the same way. An essentially new and different economic unit must be formed.* [Emphasis supplied.]

We do not think that the effect of the plan was to form a new and different economic unit. The income was earned, as in the past, by the use of Hoosick's assets, title to which remained with petitioners (even though there was a rental agreement), in conjunction with their talents, skill, and experience, and the business continued to be operated by petititioners as formerly. We are completely impressed with the lack of reality in the transaction. It was a scheme devised by tax counsel solely to avoid the incidence of the taxing statutes. The earnings of the business are properly taxable to the petitioners. *Robert E. Werner*, 7 T. C. 39; *Louis Visintainer*, 13 T. C. 805; cf. *Burnet* v. *Leininger*, 285 U. S. 136.

Petitioners rely on *Clifford R. Allen, Jr.*, 12 T. C. 227, but in that case the facts show that the husband, after the transfer of his partnership interest to his wife, had no interest in and in no way participated in the operation of the business, directly or indirectly, as an employee or otherwise. In *Simmons* v. *Commissioner*, 164 Fed. (2d) 220, also cited by the petitioners, the husbands' interests in the partnership were completely disposed of to their respective wives and the husbands no longer had any connection with the partnership.

The second issue is whether the Hoosick Engineering Co. was entitled to deductions for contributions to its pension and profit-sharing plans for the fiscal periods ended August 31, 1945 and 1946, in the respective amounts of $9,250 and $16,161.76. We think not. The petitioners herein retained all the essentials of ownership of this company—both in form and in substance. Petitioners were not em-

ployees within the meaning of section 165 of the Internal Revenue Code, as amended. · The language of that section is clear in that it states that the exemption from tax will be granted for payments to such trusts if they are set up by the employer "for the exclusive benefit of his employees or their beneficiaries."

*Decisions will be entered for the respondent.*